IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

YVONNE C. NELSON,                                No. 3:14-cv-00914-HZ

            Plaintiff,                             OPINION & ORDER

    v.

CAROLYN COLVIN,
Acting Commissioner of Social Security,

            Defendant.

Sara L. Gabin
SARA L. GABIN, PC
14523 Westlake Drive
Lake Oswego, OR 97035

    Attorney for Plaintiff

Billy J. Williams
Acting United States Attorney
Ronald K. Silver
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE, DISTRICT OF OREGON
1000 SW Third Avenue, Suite 600
Portland, OR 97204

1 - OPINION & ORDER

John C. LaMont
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Yvonne Nelson brings this action for judicial review of the Commissioner's final decision denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). For the reasons that follow, the Commissioner's decision is reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB on October 22, 2010, alleging disability beginning on January 1, 2002. Tr. 144-150. Her application was denied initially and on reconsideration. Tr. 52-75. On October 10, 2012, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 34-51. On October 31, 2012, the ALJ found Plaintiff not disabled. Tr. 20-28. The Appeals Council denied review. Tr. 1-6.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on: "COPD, congestive heart failure, diabetes, arthritis, chronic sinusitis, HBP, thyroid, gout, edema, chronic back pain, bleeding ulcer, and depression.[1]" Tr. 53, 171. Plaintiff was sixty-four years old at the time of the administrative hearing. Tr. 167. She completed high school. Tr. 172. She has past work experience as a dispatcher for a phone company and a credit department supervisor. Id.

---

[1] Plaintiff does not define COPD or HBP.

Because the parties are familiar with the medical and other evidence in the record, the Court refers to any additional relevant facts in the discussion section below.

**SEQUENTIAL DISABILITY ANALYSIS**

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See, e.g., Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot

perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

The ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2007. Tr. 22. Thus, Plaintiff must establish disability on or before that date (hereinafter "the date last insured") in order to be entitled to DIB. Id.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of January 1, 2002, through her date last insured of December 31, 2007. Tr. 22. Next, at step two, the ALJ determined that Plaintiff had the following severe impairments through the date last insured: osteoarthritis, coronary artery disease, hypertension, ischemic heart disease, duodenal ulcer, hypothyroidism, obesity, diabetes mellitus, and chronic back pain. Id. At step three, the ALJ determined that the impairments did not meet or equal, either singly or in combination, a listed impairment. Id. At step four, the ALJ concluded that, through the date last insured, Plaintiff had the residual functional capacity to perform the full range of sedentary work. Tr. 25. With this residual functional capacity, the ALJ determined that Plaintiff was capable of performing past relevant work as a dispatcher. Tr. 29. Thus, the ALJ determined that Plaintiff was not disabled. Id.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter ... a judgment affirming,

modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."

An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence. Garrison v. Colvin, 759 F.3d 995, 1009-10 (9th Cir. 2014); see also Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006); 42 U.S.C. §§ 405(g), 1383(c)(3). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (citations and quotation marks omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). Where "the evidence can reasonably support either affirming or reversing a decision," the Court may not substitute its judgment for that of the ALJ. Id. (citation omitted). The Court reviews only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to properly determine the disability onset date; (2) failing to list all of Plaintiff's severe impairments at step two; (3) failing to consider Plaintiff's impairments collectively at step three; (4) finding Plaintiff not credible; (5) discounting the opinion of treating physician Dr. Azhar; and (6) failing to develop an RFC that

includes all functional limitations. The Court agrees that the ALJ erred in his determination of Plaintiff's credibility, but disagrees with Plaintiff as to the remainder of the issues raised.

### I.     Disability onset date

Plaintiff applied for DIB three years after her date last insured and eight years after her alleged disability onset date. She contends that she has two principal impairments, lumbar disc disease and congestive cardiac disease, and that each impairment has a different onset date. Plaintiff argues that the ALJ did not properly weigh the evidence regarding Plaintiff's lumbar disc disease in order to determine her disability onset date. As to her cardiac disease, Plaintiff argues that the ALJ was required to call a medical advisor to make an informed inference as to the disability onset date.

In addition to determining that an individual is disabled, the ALJ must establish the onset of disability. Titles II & Xvi: Onset of Disability, SSR 83-20 (S.S.A. 1983), available at 1983 WL 31249, at *1. The onset date of disability is defined in SSR 83-20 as "the first day an individual is disabled as defined in the Act and the regulations." Id.; Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008).

"In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity. The weight to be given any of the relevant evidence depends on the individual case." Id. at *2. Social Security Regulations instruct the ALJ to call a medical expert when the date of onset of a disabling impairment is not clear from the record and must be inferred. Id. at *3. If the ALJ is able to determine that the claimant is not disabled based on the record, however, he need not call a medical expert to testify. Sam, 550 F.3d at 810–11.

Here, because the ALJ found that Plaintiff was not disabled at any time through the date last insured, the question of *when* she became disabled did not arise and the procedures described in SSR 83-20 did not apply. See id. at 810; see also Scheck v. Barnhart, 357 F.3d 697, 701 (7th Cir. 2004) ("SSR 83–20 addresses the situation in which an administrative law judge makes a finding that an individual is disabled as of an application date and the question arises as to whether the disability arose at an earlier time."); Robinson v. Colvin, No. 3:13-CV-00332-AC, 2014 WL 3778572, at *9 (D. Or. July 29, 2014) (ALJ's conclusion did not raise a question of onset date because the ALJ did not find that that plaintiff was under a disability at any time). The ALJ's decision not to call a medical expert at the hearing is affirmed.

## II.     Impairment severity at step two

Plaintiff argues that the ALJ erred by finding that Plaintiff's depression was not a severe impairment and by failing to address whether Plaintiff's lumbar disc disease and leg edema were severe impairments.

At step two of the sequential analysis, the ALJ considers the severity of the claimant's impairment(s). 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). "Basic work activities" are the abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, and lifting. 20 C.F.R. § 404.1521(b). In Social Security Ruling (SSR) 85–28 (available at 1985 WL 56856, at *3), the Commissioner has explained that "an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities"; see also SSR 96–3p (available at 1996 WL 374181, at * 1) ("an impairment(s) that is 'not severe' must be a

slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities").

The Ninth Circuit has explained that the step two severity determination is expressed "in terms of what is 'not severe.'" Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity. Id. Importantly, as the Ninth Circuit noted, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." Id. (citing Yuckert, 482 U.S. at 153–54); see also SSR 85–28 (available at 1985 WL 56856, at *2) ("[T]he severity regulation is to do no more than allow the [Social Security Administration] to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working.") (internal quotation marks omitted). When a claimant meets the step-two threshold by establishing the existence of one or more severe impairments, the ALJ then continues with the sequential evaluation process and considers the effects of all impairments, whether severe or not severe. Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996), available at 1996 WL 374184, at *5.

If a claimant prevails at step two but nevertheless contends that the ALJ omitted finding a severe impairment, the claimant must show that she suffered prejudice as a result of the ALJ's alleged error. Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005). In other words, the claimant must show that, despite prevailing at step two, she was prejudiced at step three (listing impairment determination) or step five (residual functional capacity).

Here, Plaintiff asserts that the ALJ erred by not listing Plaintiff's depression, lumbar disc disease, and leg edema as severe impairments. However, Plaintiff makes no argument that this

alleged error had any prejudicial effect on Plaintiff at step three or step five.[2] Therefore, Plaintiff's argument fails.

### III. Combined impairments at step three

Plaintiff argues that the ALJ erred by considering each of her impairments individually but not collectively. However, Plaintiff offers "no theory, plausible or otherwise" or evidence as to how her combined impairments equaled a listed impairment. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (holding that the ALJ's failure to consider equivalence was not reversible error because the claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listing impairment); see also Burch, 400 F.3d at 683 ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.").

As the Ninth Circuit reiterated in Burch, a claimant carries the initial burden of proving a disability. 400 F. 3d at 683 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989). The ALJ's failure to consider Plaintiff's impairments collectively is not error when Plaintiff did not set forth any evidence to support the diagnosis and finding of a listed impairment. Id.

### IV. Plaintiff's credibility

The ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of her alleged symptoms to have "limited credibility." Tr. 26. The ALJ discounted Plaintiff's statements because they were inconsistent with her activities of daily living. Tr. 26.

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R. § 404.1529(a).

---

[2] In addition, the Court finds no support in the record for Plaintiff's contention that state examiner Dr. Nicoloff found depression to be a severe impairment or that non-examiners Dr. Brown and Dr. Eder found Plaintiff's leg edema to be a severe impairment.

9 - OPINION & ORDER

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citing Bunnell v. Sullivan, 947 F.2d 341, 345–46 (9th Cir. 1991)(en banc )). "The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks omitted). The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006); see also Bunnell, 947 F.2d at 346–47.

      A careful review of the record reveals that the ALJ erroneously characterized statements and documents to reach the conclusion that Plaintiff's activities of daily living showed that she was not as limited as alleged. For example, the ALJ noted that Plaintiff testified that she cared for her ill father before he died in early 2002. However, Plaintiff's full testimony on this topic demonstrates the limited extent to which she was actually able to help her father. When asked whether she helped her father, Plaintiff responded, "[p]artially, yes." Tr. 39. Plaintiff then explained that, at the time, she had fallen and was "barely able to walk." Id.

The ALJ also pointed to the fact that Plaintiff moved to Oregon in 2003 to care for an ill friend. Tr. 26. However, the exhibits cited to by the ALJ contain statements by Plaintiff's doctor noting that Plaintiff is moving despite continuing to struggle with her pain and that Plaintiff will need to transfer her care upon arrival in Oregon. Tr. 224. Furthermore, Plaintiff's friend in Oregon, Evelyn Alton, explained in detail in an Adult Third-Party Function report the extent to which Plaintiff struggled with daily living and how much help she needed. Tr. 179-86. Ms. Alton wrote that Plaintiff "moved here originally to help me out with my conditions, but ended up with the same illnesses she came to help me with . . . My son aids us all the time . . . She really needs help." Tr. 186. While the ALJ noted that Ms. Alton wrote her report in 2010, three years after the date last insured, the ALJ found her "credible to the extent [her statement was] based on personal observations." Tr. 28. At a minimum, Ms. Alton's statement suggests Plaintiff's daily activities were limited to some extent in 2007.

The ALJ further noted that medical providers repeatedly told Plaintiff to exercise more often, despite her alleged inability to walk. Tr. 26. However, most of the medical charts the ALJ points to simply contain notes by Dr. Azhar (Plaintiff's treating physician), documenting that he advised Plaintiff of the "importance of weight control, diet, exercise and stress management." Tr. 680. The Court fails to see how that medical advice reflects upon Plaintiff's credibility.

Finally, the ALJ points to a note from August 2008 where treating physician Carmelindo Siquiera wrote that "activities of daily living were normal." Tr. 565. Dr. Siquiera does not elaborate as to what those activities were, leaving the Court unable to assess whether that note has any bearing on Plaintiff's credibility. See Reddick, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility."). Furthermore, the same medical chart

11 - OPINION & ORDER

notes that Plaintiff had severe low back pain for the prior two years, brought on by walking, which limited her "quite a lot." Tr. 564.

In sum, the ALJ's conclusion regarding Plaintiff's credibility is not supported by substantial evidence. The ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports.

## V.     Treating physician Dr. Azhar

"In disability benefits cases ... physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work." Reddick, 157 F.3d at 725 (9th Cir. 1998) (citation omitted). Therefore, the Ninth Circuit has developed standards that guide its analysis of an ALJ's weighing of medical evidence. Garrison, 759 F.3d at 1012-13 (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

Specifically, the Ninth Circuit distinguishes among the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Garrison, 759 F.3d at 1012 (quoting Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Id. (citations omitted). While the opinion of a treating physician is thus entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician. See Ryan, 528 F.3d at 1198. "The weight afforded a non-examining physician's testimony depends 'on the degree to which [he] provide[s] supporting explanations for [his] opinions.'" Id. (quoting § 404.1527(d)(3)).

12 - OPINION & ORDER

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Id. This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be "entitled to the greatest weight ... even if it does not meet the test for controlling weight." Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctor's, are correct." Id. (citation omitted).

Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. Garrison, 759 F.3d at 1012; see also Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996). "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." Id.

Here, the ALJ assigned "little weight" to the opinion of treating physician Dr. Ezra Azhar. Dr. Azhar began treating Plaintiff in 2003. Tr. 720. In December 2011, Dr. Azhar completed an attorney-supplied questionnaire about Plaintiff's functional limitations on or before December 31, 2007. Tr. 787. Plaintiff's attorney instructed Dr. Azhar to provide answers only if he agreed that Plaintiff was too ill to work before the date last insured. Id. The form also listed several diagnoses and asked Dr. Azhar if he agreed that Plaintiff suffered from those conditions before the date last insured. Tr. 788. Dr. Azhar indicated that he agreed that Plaintiff suffered

13 - OPINION & ORDER

from the listed diagnoses. Id. Dr. Azhar did not provide any narrative explaining his affirmative response, instead just writing "please see chart notes." Id. Regarding Plaintiff's limitations, Dr. Azhar indicated that Plaintiff could occasionally and frequently lift and/or carry 20 pounds; stand and/or walk at least two hours total in an eight-hour work day, but not more than one hour at a time; and sit with customary breaks at least two hours total in an eight-hour work day. Tr. 789. Dr. Azhar also indicated that Plaintiff needed to alternate periodically between sitting, standing, and walking to alleviate pain or discomfort every one to two hours. Tr. 790. He also stated that Plaintiff could not kneel, crawl, crouch, or climb. Id. When asked to choose among various limitations on concentration, persistence, and pace, Dr. Azhar circled both "no inability" and "inability up to one fourth of the workday or work week." Id. He did not explain this apparent contradiction. Id. He also did not respond to the question asking for his view on Plaintiff's credibility as a patient. Tr. 791.

The ALJ found that Dr. Azhar's treatment notes did not support the alleged limitations.[3] The ALJ reviewed Dr. Azhar's treatment notes and did not find records of Plaintiff's inability to sit, stand, walk, kneel, crawl, climb, or concentrate. From 2003 to 2007, Dr. Azhar's notes consistently showed that Plaintiff was "doing well" or "generally doing good." Tr. 27.

In addition, the ALJ concluded that Dr. Azhar's treatment notes were contradicted by other treating physicians. Dr. O'Connor's treatment notes from 2001 through 2003 do not discuss limitations on standing, sitting, walking, lifting, concentrating, or postural maneuvers. Tr. 222-44. After Plaintiff's intake appointment with Dr. Siquiera in August 2008, the doctor noted that Plaintiff could perform normal daily activities. Tr. 564-95. State disability services doctor

---

[3] As Plaintiff concedes, Dr. Azhar's treatment notes "leave something to be desired; they assign multiple diagnosis with minimal or no discussion of symptom report or clinical observations[.]" Pl.'s Br. 25. In addition, the Court has difficulty reading many of Dr. Azhar's notes, due to his handwriting and the poor quality of the copies in the record.

14 - OPINION & ORDER

Sharon Eder reviewed all of Plaintiff's medical records and concluded that Plaintiff could perform light work, with occasional kneeling, crawling, crouching, and climbing of ladders, ropes, and scaffolds. Tr. 65-75. The ALJ assigned "some weight" to Dr. Eder's opinion because a review of all evidence justified limiting Plaintiff to the full range of sedentary work. Tr. 28.

Plaintiff does not dispute the ALJ's conclusion that Dr. Azhar's opinion is contradicted by his treatment notes and the notes of other treating physicians. Instead, Plaintiff argues that Dr. Azhar's opinion is "worth more than the 'little' weight the ALJ allows" because Dr. Azhar was familiar with Dr. Siquiera's diagnoses of Plaintiff and Plaintiff's hospital visits, and "over many years had followed [Plaintiff] enough to allow him to form judgments about her." Pl.'s Br. 25. Essentially, Plaintiff asks this Court to find that the ALJ erred, not because of the evidence the ALJ cites in support of his opinion, but because Dr. Azhar's opinion was reliable, notwithstanding his contradictory treatment notes and the notes of other treating physicians. Plaintiff's requested approach does not comport with this Court's responsibility to review the ALJ's decision and determine whether it is supported by substantial evidence.

Because the ALJ's decision to assign little weight to Dr. Azhar's opinion is supported by substantial evidence, including "a detailed and thorough summary of the facts and conflicting clinical evidence," the Court affirms the ALJ's findings.

## VI. Residual functional capacity (RFC)

Plaintiff argues that the ALJ did not develop a proper RFC. While Plaintiff's argument is unclear, the Court construes it as asserting that the ALJ should have developed an RFC that limited Plaintiff to maintain persistence no more than four to five hours a day. However, the only possible basis for such a limitation is the questionnaire completed by Dr. Azhar. For the reasons already explained, the ALJ properly discounted the weight assigned to Dr. Azhar's opinion. In

particular, the portion of the questionnaire that Plaintiff contends the ALJ should have adopted contains contradictory responses by Dr. Azhar—when asked to choose among various limitations on Plaintiff's ability to maintain consistent concentration, persistence, and pace, Dr. Azhar circled both "no inability" and "inability up to one fourth of the workday or work week." Tr. 790. Dr. Azhar did not explain this apparent contradiction. Therefore, the Court finds that there was no error in the ALJ's decision not to incorporate Dr. Azhar's opinion into the RFC.

### VII.   Remand for further proceedings

In sum, the ALJ did not err as to the disability onset date, the listing of severe impairments at step two, the evaluation of Plaintiff's severe impairments at step three, the decision to discount the opinion of Dr. Azhar, and the development of the RFC. The ALJ did, however, err by finding Plaintiff not entirely credible.

Plaintiff requests that this Court remand the case for further proceedings. Defendant does not address the issue of remedy. The Court agrees with Plaintiff's requested remedy because Plaintiff's testimony is unclear as to how much she was able to work before her date last insured. Plaintiff testified that, in November 2007, she "probably" would not have been able to work a full day. Tr. 47. She estimated that out of an eight-hour day, she "probably" only worked "two pretty good hours." Tr. 48. Plaintiff estimated that she would have missed half a month of work, if she had continued working after November 2007. Id. However, she later testified that by the time she retired in in 2001, she was not able to work at all. Id.

The VE testified that an individual who was absent at least a week a month would not be able to maintain competitive employment. Tr. 50. The Court is unable to determine, based on the record as developed, what Plaintiff's ability to work was at the time of her date last insured. "Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous,

the proper approach is to remand the case to the agency." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014). Accordingly, this case is remanded for further administrative proceedings.

## CONCLUSION

Because the ALJ erred in failing to provide legally sufficient reasons for discounting Plaintiff's credibility, the Court reverses the ALJ's decision finding Plaintiff not disabled. But because the record does not compel a finding of disability, the Court remands the case to the agency for further proceedings.

IT IS SO ORDERED.

Dated this _4_ day of _June_, 2015

_____
MARCO A. HERNÁNDEZ
United States District Judge

17 - OPINION & ORDER